**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 CA 1003

LOUIS AND STACEY PYLE

VERSUS

ST. JOSEPH, LLC

Judgment Rendered: JUN 1 4 2022 , 2022

********

Appealed from the 22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Case No. 2019-13329

The Honorable August J. Hand, Judge Presiding

********

Laurie M. Pennison                    Counsel for Plaintiffs/Appellees
Mandeville, Louisiana                 Louis and Stacey Pyle

Ralph S. Whalen, Jr.                  Counsel for Defendant/Appellant
New Orleans, Louisiana                St. Joseph, LLC

********

BEFORE: McDONALD, LANIER, AND WOLFE, JJ.

J. Wolfe concurs in the result without reasons.

McDonald, J. concurs.

**LANIER, J.**

The defendant, St. Joseph, LLC (St. Joseph), appeals a partial summary judgment of the Twenty-Second Judicial District Court granted in favor of the plaintiffs, Louis and Stacey Pyle. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On May 30, 2018, the Pyles and St. Joseph entered into a contract for the construction of a home in Abita Springs, Louisiana. In the contract, St. Joseph agreed to build a private residence for the Pyles. Article 3, subpart 3.1 of the contract provided that the Pyles would pay St. Joseph the sum of $313,310.82, subject to additions and deductions provided for in the contract documents,[1] plus a contractor fee of $34,244.00. The total contract price was $347,554.82.

Subpart 3.2 of the contract specified that the contract price was based on allowances for materials. Subpart 7.1 stated that when the costs of items were more than or less than the allowances, the contract sum would be adjusted accordingly by a written change order prior to ordering and installing the items. During construction, the Pyles requested a change order via email, and a price quote was submitted by St. Joseph. Due to this change and other changes, the Pyles contend that they paid $41,106.62 in addition to the total contract sum.

Upon the house's completion but before a certificate of occupancy was granted, St. Joseph invoiced the Pyles for $111,345.91, and filed a statement of

---

[1] Subpart 6.1 of the contract lists the contract documents as:

> this Agreement, Drawings, Specifications, Selection Sheets, Estimated Cost Analysis, addenda issued prior to the execution of this Agreement, other documents listed in this Agreement and only written modifications issued after execution of this Agreement which have been signed or initialed by both the [Pyles] and [St. Joseph.] There are no agreements between the parties other than the Contract Documents and no oral agreements exist between the parties.

lien and privilege in the conveyance records of St. Tammany Parish on May 16, 2019.[2] A copy of the lien was forwarded to the Pyles on June 25, 2019. St. Joseph explained that it had incurred additional labor costs during the construction, and that the contract was a "cost-plus" contract, entitling St. Joseph to recover overages attributable to the increases in the cost of construction. The Pyles, however, claimed that the contract was a "lump sum" contract with a fixed amount, which they paid. The Pyles claimed that the additional $41,106.62 they paid for allowance changes was not included in the invoice submitted by St. Joseph.

The Pyles filed a petition for declaratory judgment and breach of contract/breach of warranty pursuant to Louisiana's New Home Warranty Act (NHWA), La. R.S. 9:3141 *et seq.*, on July 3, 2019. St. Joseph filed an answer and reconventional demand on October 14, 2019, in which it claimed: the contract was a cost-plus contract made evident by the contract's language; the Pyles had requested numerous revisions and additions, which significantly modified the cost and scope of the entire project; the Pyles had breached the contract in bad faith by refusing to pay the outstanding balance; that St. Joseph relied on the Pyles' representations regarding the design documents to its detriment; and that the Pyles were unjustly enriched by the work done by St. Joseph.

The Pyles filed a motion for partial summary judgment on April 13, 2020. In their supporting memorandum, the Pyles asserted that the contract was a lump sum contract; therefore, St. Joseph could not charge additional costs, and the lien St. Joseph filed should be cancelled. The Pyles also requested all court costs and attorney fees associated with removal of the lien be paid by St. Joseph.

In its review of the motion for partial summary judgment, the trial court found the contract to be a lump sum contract. In a judgment signed November 17,

---

[2] The Pyles' petition and the statement of lien and privilege filed by St. Joseph show the total invoiced amount as $122,756.11.

3

2020, the trial court granted the Pyles' motion for partial summary judgment, ordered the lien filed by St. Joseph to be cancelled, and awarded costs and attorney fees to the Pyles.[3] St. Joseph timely appealed.[4]

## ASSIGNMENTS OF ERROR

St Joseph raises the following assignments of error:

1. The trial court erred in granting a partial summary judgment where there were contested facts.

2. The trial court erred in holding the contract in question was a lump sum contract.

## STANDARD OF REVIEW

The standard of review for the granting of a partial summary judgment is *de novo*. *Spanish Lake Wildlife Refuge & Botanical Gardens, Inc. v. Parish of Ascension ex rel. Martinez*, 2011-1882 (La. App. 1 Cir. 5/4/12), 2012WL1580760, *3 (unpublished), writ denied, 2012-1677 (La. 11/2/12), 99 So.3d 671. Summary judgments are favored by the courts as a procedure to secure a "just, speedy, and inexpensive determination." La. C.C.P. art. 966(A)(2). Summary judgment shall be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"[I]f the mover will not bear the burden of proof at trial on the issue that is before the court ..., the mover's burden on the motion does not require him to

---

[3] On December 16, 2020, St. Joseph filed an *ex parte* consent motion for designation of the judgment as final pursuant to La. C.C.P. art. 1915(B)(1). On December 18, 2020, the trial court signed an order designating the judgment as final pursuant to La. C.C.P. art. 1915(B)(1) and made the express determination that there was no just reason for delay.

[4] A Show Cause Order was issued by this court in reference to the November 17, 2020 judgment on appeal because, although the judgment ordered the "Statement of Lien" filed by St. Joseph to be cancelled, the lien itself was not attached to the judgment, and because the attorney fee award was uncertain. On February 10, 2022, the record was supplemented with an amended judgment signed by the trial court on January 12, 2022, which attached the referenced lien and awarded a definite amount of attorney fees. Thus, on March 4, 2022, we maintained the appeal.

4

negate all essential elements of the adverse party's claim, action, or defense[.]" *Id.* Rather, the movant must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. See *Id.*

## DISCUSSION

Contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. See La. C.C. arts. 1983 and 2045; *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC,* 2012-2055 (La. 3/19/13), 112 So.3d 187, 192. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; *Clovelly Oil,* at 192. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. La. C.C. art. 2047; *Clovelly Oil,* at 192. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. La. C.C. art. 2046; *Clovelly Oil,* at 192.

However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. La. C.C. art. 2046; *Clovelly Oil,* at 192. Most importantly, a contract must be interpreted in a common-sense fashion, giving the words of the

5

contract their common and usual significance. La. C.C. art. 2047; *Clovelly Oil*, at 192. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. La. C.C. art. 2049; *Clovelly Oil*, at 192. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050; *Clovelly Oil*, at 192.

The Pyles submitted the contract in support of their motion for partial summary judgment. The contract is titled "New Residential Construction Agreement Contract between Owner and Contractor." It states in Article 1, subpart 1.2 that the contract is predicated on the Pyles receiving a loan from Hancock Bank in the amount of $350,000.00. Article 3, titled "Contract Sum," states in subpart 3.1 "[The Pyles] shall pay [St. Joseph] ... the estimated sum of THREE HUNDRED THIRTEEN THOUSAND THREE HUNDRED TEN And Eighty Two Cents ($313,310.82) subject to additions and deductions as provided in the Contract Documents. PLUS CONTRACTOR FEE OF THIRTY FOUR THOUSAND TWO HUNDRED FORTY FOUR ($34,244.00)."

The Pyles also submitted St. Joseph's written estimate/bid for the project. In that bid, St. Joseph characterized the estimate as a "lump sum." While the term "lump sum" is not used in the contract itself, it clearly states that the Pyles agreed to pay a definite sum of money to St. Joseph, which was subject to certain additions and deductions. A clear and definite contractor fee was also included. Article 3, subpart 3.2 further specified that "[a]ny increase to [St. Joseph's] labor cost due to the [Pyles'] decision to increase or otherwise modify any particular allowances shall be borne by [the Pyles]. A change in material cost of the same type will not cause an increase in labor costs."

6

Article 7, titled "Allowances & Selections," states in subpart 7.1 that "[w]henever the costs are more than or less than allowances, the Contract Sum shall be adjusted accordingly by Written Change Order prior to ordering or installing said items." This language further evidences the parties' ability to vary the contract sum upon completion. In Article 12, titled "Changes in the Work," subpart 12.1 states that "[t]he [Pyles] ... may order changes in the Work consisting of additions, deletions or modifications, the Contract Sum ... being adjusted accordingly." Therefore, in more than one article in the contract it is established that the Pyles agreed to pay an initial sum of money to St. Joseph in consideration of St. Joseph constructing their new home, but that sum was subject to modification at any time based on any written change order agreed upon between the parties.

It is unclear from the record how the contract was modified by written change orders. The Pyles claim in their petition that they paid St. Joseph $41,106.62 for changes they requested to be made to the project. Attached to the contract is a Cost Analysis Estimate dated May 30, 2018. Of the items included on this estimate, any marked with an asterisk are "allowances, prices slightly subject to change, or unsure of vendor." The marked items are "Sitework" priced at $9,000.00, "Concrete" priced at $26,000.00, "Tile" priced at $3,200.00, "Roofer" priced at $5,200.00, and "Culvert," which has no listed price, but contains the note "Unsure how to price since city provides service. To be added once paid/completed." The "Contractor Fee, Profit, Overhead, Transportation, Etc." is also marked with an asterisk, and the indicated price is $34,244.00. Next to the price is the note "Fee will not change unless significant change order is made." Also attached is an exhibit that Mr. Pyle attested is a written change order for the carport hangover, totaling $3,544.58. Also submitted is what the Pyles claim is an

7

invoice totaling $8,790.00 for a change order related to air conditioning and heating, but we note this does not appear to be the actual written change order.

The Pyles also introduced St. Joseph's invoice totaling $111,345.91. The invoice itemizes the costs of all material and labor through each phase of construction. There are several notes indicating overages due to extra work/material that was needed due to requests by the Pyles. Several items are marked by asterisks, which may indicate allowances or change orders. The final project total is $463,410.73. The Pyles' payment of $337,554.81 is subtracted from the total, along with $14,510.00, which is listed as "Owed from Hancock Whitney." What St. Joseph indicates as "Owed From Louis & Stacey Pyle" is $111,345.91.[5]

The documents submitted by St. Joseph in opposition to the motion for partial summary judgment indicate that the Pyles had made a large number of requests during the course of the construction that can be considered change orders, and St. Joseph had submitted invoices to verify the costs of those changes. Although we are unable to verify from the Pyles' exhibits the $41,106.62 in changes and allowances they claim to have paid to St. Joseph, and although St. Joseph's claim of $111,345.91 is substantiated by its invoice to the Pyles, credibility issues have no place in the summary judgment procedure. See *Revere v. Dolgencorp, Inc.*, 2004-1758 (La. App. 1 Cir. 9/23/05), 923 So.2d 101, 107.

St. Joseph has shown, via evidence of outstanding disputed amounts, that there is a genuine issue of material fact as to whether the contract is a lump sum contract. Therefore, the lien must remain in effect until the issue of the disputed contract amount is resolved. See *225 Baronne Complex, LLC v. Roy Anderson Corp.*, 2016-0492 (La. App. 4 Cir. 12/14/16), 2016WL7238975, *8 (unpublished),

---

[5] The final calculation should be $111,345.92.

writ denied, 2017-0326 (La. 4/7/17), 218 So.3d 116 (trial court committed error in cancelling lien, where a sum of money may be owed to the lienholder).

As we find that there are disputed issues of fact regarding the change orders and their amounts, the partial summary judgment must be reversed and remanded for further proceedings. Until those disputed amounts and the disposition of the lien are resolved, the issue of whether the contract is a lump sum contract is prematurely before us. Therefore, we pretermit discussion on the nature of the contract.

## DECREE

The January 12, 2022 partial summary judgment of the Twenty-Second Judicial District Court in favor of the appellees, Louis and Stacey Pyle, is reversed. We remand this matter for further proceedings consistent with this opinion. All costs of this appeal are assessed to Louis and Stacey Pyle.

**REVERSED AND REMANDED.**